# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREW GROSS, III,** | : | **CIVIL NO. 1:16-CV-2289** |
| Petitioner | : | (Chief Judge Conner) |
| v. | : | |
| **WARDEN, USP CANAAN,** | : | |
| Respondent | : | |

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 filed by petitioner Andrew Gross ("Gross"), a federal inmate currently confined at the United States Penitentiary, Canaan, in Waymart, Pennsylvania ("USP-Canaan"). Named as the sole respondent is the warden of USP-Canaan. The petition is ripe for disposition and, for the reasons that follow, will be denied.

### I. Background

Gross raises several issues in the instant habeas petition. First, Gross seeks restoration of fifty-five (55) days good conduct time which he claims the BOP failed to restore after the Regional Director expunged incident report number 2634977. (Doc. 1, at 3).

Second, Gross claims that his custody classification score is incorrectly elevated because the BOP failed to remove three (3) points after the Regional Director expunged an incident report in which he was charged with attempted

escape. (Doc. 1, at 3). He asserts that this elevated custody classification score is preventing him from transfer to a lower security facility and removal from the two-hour watch high accountability program. (Id.) He further claims that he was denied placement in a halfway house because the escape history appears in his prison record. (Id.)

Third, Gross claims the BOP failed to restore fifty-four (54) days good conduct time after the Regional Director partially granted his appeal of Administrative Remedy 588468-R11, which relates to an appeal of incident report number 1868010. (Doc. 1, at 4).

Lastly, Gross requests that the court excuse his failure to exhaust administrative remedies as futile. (Doc. 1, at 2). He asserts that his immediate judicial interests outweigh the exhaustion requirement.

For relief, Gross requests immediate release to a halfway house, reclassification to a lower security institution, restoration of his good conduct time, and a change in his custody classification score. (Doc. 1, at 1, 3-4).

## II. Discussion

### A. Incident Report Number 2634977

Gross argues that he is entitled to reinstatement of fifty-five (55) days of good conduct time based on the Regional Director's expungement of incident report number 2634977. (Doc. 1, at 3). Respondent counters that the Regional Director only expunged two of the three code violations charged in incident report number 2634977, and the sanctions for the remaining guilty finding of attempted escape included disallowance of forty-one (41) days of good conduct time and forfeiture of

2

fourteen (14) days of non-vested good conduct time. (Doc. 10, at 8-9). Thus, respondent contends that the petition should be denied as to incident report number 2634977. (Id.) Gross' claims regarding incident report number 2364977 are meritless.

On October 7, 2014, Gross was served with incident report number 2634977, charging him with a code 102A violation for attempted escape, a code 196A violation for use of the mail for an illegal purpose, and a code 305 violation for possession of anything not authorized. (Doc. 10-2, at 12, Incident Report). The incident is described as follows:

> On September 30, 2014, I Case Manager Jon Schmalensee was conducting a cell search of D2-219L. During a search of his locker, I found Uniform Commercial Code (UCC)-1 forms in his property, with his name at the top. UCC forms are prohibited, because inmates can use them to file false liens on staff. I then gathered all of his paperwork, and brought it to the D-Unit crossover in order to search the rest. I searched the rest of the contents of his paperwork, and found numerous altered court documents. He had altered an FRP receipt to fraudulently claim that he had paid his FRP obligation. His altering of FRP receipts, which had appeared as paid through the courts is a use of the mail for an illegal purpose.
>
> I also found in his property a copy of his Judgment and Commitment Order, which he had altered, eliminating two charges from it, effectively making it appear as though his time should be reduced. He also had with this altered J&C a doctored cover letter from the Eastern District Court of Michigan, claiming the doctored J&C was an amended one, certified by the court. His attempt at getting his projected release date changed is an attempted escape.
>
> Finally, I found numerous altered tax documents and hundreds of names and social security numbers in his property. He had filled out and altered W-2 and 1040 documents for a Rebecca Sanchez and an Adrian Cole. All of these items are considered contraband, as they can and might have been used to commit identity theft.

(Id.)

3

On December 9, 2014, Gross received advanced written notice of the charges against him. (Doc. 10-2, at 136). The matter was referred to the Unit Discipline Committee ("UDC") for further action. (Id. at 137). Gross appeared before the UDC and the UDC ultimately referred the incident to the Discipline Hearing Officer ("DHO"). (Id.)

On December 11, 2014, a staff member informed Gross of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form and "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (Doc. 10-2 at 137). Gross refused to sign the forms. (Id.)

On January 29, 2015, Gross appeared for a hearing before DHO D. Ezekiel. (Doc. 10-2, at 136-140, DHO Report). During the January 29, 2015 hearing, the DHO confirmed that Gross received advanced written notice of the charges on December 9, 2014, that he had been advised of his rights before the DHO on December 11, 2014, and that Gross requested the assistance of a staff representative and requested to call one witness. (Id. at 136-37).

The DHO again advised Gross of his rights and Gross indicated that he understood them. (Id. at 137). Gross did not submit any documentary evidence in support of his position. (Id.) Gross made the following statement regarding the charges:

> Ms. Moore locked me up for all this, and then they kicked me out of SHU. Mr. Schamlensee comes to my unit two days later, searches my cell and writes me a shot. I didn't send the envelope to Grand Prairie, and those SS#'s found in my cell have been there for years. I didn't know that I had them.

(Id. at 136).

4

After consideration of the evidence, the DHO found that Gross committed the prohibited acts of attempted escape, use of the mail for an illegal purpose, and possession of anything not authorized. (Id. at 139). Gross was advised of his appeal rights at the conclusion of the hearing. (Id. at 140). He received a copy of the original DHO report on February 9, 2015. (Id.)

On February 17, 2015, Gross filed Administrative Remedy 811393-R1 with the Regional Office requesting expungement of all three charges in incident report number 2634977. (Doc. 10-2, Declaration of Erin Odell, Attorney Advisor for the Federal Bureau of Prisons ("Odell Decl."), at 3, ¶ 7; Doc. 10-2, at 119, Administrative Remedy Generalized Retrieval; Doc. 10-2, at 131). On April 6, 2015, the Regional Director determined that the finding that Gross committed the prohibited acts of use of the mail for an illegal purpose (code 196A) and possessing anything unauthorized (code 305) should be expunged. (Doc. 10-2, Odell Decl., at 3, ¶ 7; Doc. 102, at 132). The DHO Report was to be amended to reflect the expungement of those charges. (Id.) The Regional Director upheld the finding that Gross committed the prohibited act of attempted escape (code 102A). (Id.)

On March 24, 2015, the DHO amended incident report number 2634977. (Doc. 10-2, at 136-140, Incident Report). The amended DHO report noted that Gross committed the prohibited act of attempted escape. (Id.) The DHO report indicated that the prohibited acts of use of the mail for illegal purposes and possession of anything not authorized were expunged based on Administrative Remedy Number 811393-R1. (Id. at 139). The DHO explained his findings as follows:

Section 11 of the Incident Report describes the specific action of inmate Gross as an attempt to escape from a secure institution. Specifically, inmate Gross was found in possession of altered court documents which significantly reduced his prison sentence. Additionally, Section 11 of the Incident Report describes inmate Gross being in possession of the personal information of other individuals which appears to be for the purpose of stealing their identity and filing false income tax returns. During the UDC hearing, inmate Gross stated that his due process rights were violated as he was not given 24 hour notice of the incident. Inmate Gross was advised there was a delay in him receiving a copy of the charges which was due to the Incident Report being rewritten as noted in the second paragraph of this section. During the DHO hearing, inmate Gross stated that he did not send the documents to Grand Prairie, and that the paper with the names and social security numbers on it, he has had for years and wasn't aware it was there. The DHO believes inmate Gross' statement to [be] a fabrication of the truth. The DHO noted inmate Gross is serving a prison sentence for Counterfeiting Securities and Mail & Credit Card Fraud. The DHO believes this Incident Report falls in line with what inmate Gross was doing as a civilian before he got caught and was subsequently convicted. Specifically, the DHO believes inmate Gross altered his Judgment and Commitment Order to reflect fewer conviction counts and a lesser prison sentence. The DHO also believes inmate Gross created a fictitious letter from the Judge's office to Mr. Santana directing that the amended order be updated with the District of his conviction and the Bureau of Prisons. The DHO bases this decision on the fact that Grand Prairie received documents "for" inmate Gross and "from" inmate Gross which had been "amended." Given inmate Gross' history of being deceptive and his attempts at defrauding others for his monetary gain, the DHO believes inmate Gross possessed the social security numbers of others for the sole purpose defrauding those individuals. The DHO bases this on the fact he was attempting to mask the individuals' social security numbers by writing at the top of the page that i[t] was "Family & Friends Names, Address & Phone Numbers. The DHO noted inmate Gross' efforts in attempting to disguise the social security numbers by writing the prefix followed by a hyphen, and then the remaining six numbers, in lieu of the required seven numbers for a phone number. This in addition to Section 11 of the Incident Report, the supporting copies of the altered J&C Order, the created letter to Mr. Santana, and the copy of the W-2 form with the personal information of two unknown individuals is evidence the prohibited acts were committed.

> Based on the greater weight of the evidence, the DHO finds inmate Gross committed the prohibited act of Code 102A, Attempted Escape, Code 196A, Attempted Use of the Mail for Abuses for Illegal Purposes and Code 305, Possession of Anything Not Authorized were expunged based on your Administrative Remedy number 811393-R1 .

(Doc. 10-2, at 138-39).

As such, the DHO sanctioned Gross with forty-one (41) days disallowance of good conduct time, fourteen (14) days forfeiture of non-vested good conduct time, ninety (90) days disciplinary segregation, one hundred eighty (180) days email restriction, and one hundred eighty (180) days phone restriction. (Doc. 10-2, at 139).

On May 4, 2015, Gross filed Administrative Remedy 811393-A1 at the Central Office requesting expungement of the remaining code violation of attempted escape. (Doc. 10-2, Odell Decl., at 3, ¶ 7; Doc. 102, at 133-34). On November 28, 2016, the Central Office denied Gross' appeal, and found that the DHO's determination was reasonable and supported by the evidence, and the sanctions imposed were commensurate to the severity level of the offense and in compliance with policy. (Doc. 10-2, at 135).

The DHO imposed sanctions that included the loss of good conduct time. Therefore, Gross has identified a liberty interest in this matter. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. Federal inmates possess a liberty interest in good conduct time. See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident

inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R. § 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

In the instant case, it is clear that Gross was afforded all of the required procedural rights set forth in Wolff. Gross received advanced notice of the incident report. The DHO noted that although Gross did not receive a copy of the charges within twenty-four (24) hours of the incident, he did not provide any evidence that this delay hindered his ability to provide a defense. (Doc. 10-2, at 137). Moreover, pursuant to the regulations, an inmate "will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." 28

9

C.F.R. § 541.5(a) (emphasis added). The regulations do not provide that the inmate must receive notice of the charges within twenty-four (24) hours of the incident.

Gross was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Gross failed to present any credible evidence in support of his position. Gross requested a staff representative who was present at the DHO hearing. (Doc. 10-2, at 136). Gross requested to call a fellow inmate as a witness. Prior to the DHO hearing, Gross signed a statement conceding to the written statement of the inmate-witness in lieu of his in-person testimony. (Doc. 10-2, at 136).

Based on the evidence, the DHO found Gross guilty of attempted escape because he altered documents in an attempt to change his projected release date and fraudulently gain early release from custody. Gross received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Gross was also notified of his right to appeal. Indeed, Gross utilized the appeal process and unsuccessfully argued that the remaining attempted escape charge should also be expunged and the sanctions associated with it should be reversed.

Since Gross was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly reveals the existence of evidence to allow the DHO to conclude that Gross was guilty of the charge of attempted escape. The DHO relied upon the reporting officer's incident report, the altered court documents found in Gross' cell,

and Gross' brief statement denying the charge. Based on this evidence as relied upon by the DHO, and without any contradictory evidence submitted by Gross, except his self-serving denial of the prohibited act charged, the court finds that Gross' due process rights were not violated by the determination of the DHO.

Finally, the court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq.* Gross was found guilty of a 100-level, greatest severity level prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 100-level offenses:

> A. Recommend parole date rescission or retardation.
> B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
> B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
> C. Disciplinary segregation (up to 12 months).
> D. Make monetary restitution.
> E. Monetary fine.
> F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
> G. Change housing (quarters).
> H. Remove from program and/or group activity.
> I. Loss of job.
> J. Impound inmate's personal property.
> K. Confiscate contraband.
> L. Restrict to quarters.
> M. Extra duty.

28 C.F.R. § 541.3 (Table 1). The DHO's guilty finding of a code 102A offense of attempted escape was not expunged and the sanctions associated with the charge remain valid. The sanctions for the guilty finding of attempted escape included disallowance of forty-one (41) days of good conduct time and forfeiture of fourteen

11

(14) days of non-vested good conduct time. Thus, the sanctions imposed by the DHO in this instance were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied as to incident report number 2634977.

### B. Incident Report Number 1868010

Respondent next argues that the claims regarding incident report number 1868010 must be denied based on Gross' failure to comply with the BOP's administrative review process. (Doc. 10, at 9-11).

Despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing a habeas claim under § 2241. See Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato, 98 F.3d at 761-62 (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if

12

the administrative procedure is clearly shown to be inadequate to prevent irreparable injury"); Carling v. Peters, No. 00-2958, 2000 WL 1022959, at *2 (E.D. Pa. July 10, 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In general, the BOP's administrative review remedy program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for review of an issue which relates to any aspect of their confinement. (Doc. 9-2, Sullivan Decl. ¶ 5, citing 28 C.F.R. §§ 542.10, *et seq.*). With respect to disciplinary hearing decision appeals, a BOP inmate can initiate the first step of the administrative review process by filing a direct written appeal to the BOP's Regional Director (thus bypassing the institutional level of review) within twenty days after receiving the DHO's written report. (Id. at ¶ 7, citing 28 C.F.R. §§ 542.15(a), 542.14(d)(2)). If dissatisfied with the Regional Director's response, a Central Office Appeal may then be filed with the BOP's Office of General Counsel. (Id., citing 28 C.F.R. § 542.14(d)(2)). This is the inmate's final available administrative appeal.

Gross received incident report number 1868010 for an incident that occurred on May 12, 2009 at USP-Terre Haute. (Doc. 10-2, Odell Decl., at 4, ¶ 10; Doc. 10-2, at 152, Chronological Disciplinary Record). On May 4, 2010, Gross filed Administrative Remedy 588468-F1 at the United States Penitentiary in Inez, Kentucky ("USP-Big Sandy"), challenging the DHO decision pertaining to incident report number 1868010. (Doc. 10-2, Odell Decl., at 4, ¶ 11; Doc. 10-2, Administrative Remedy Generalized Retrieval, at 77). Gross requested expungement of the incident report

13

and reinstatement of his phone privileges. (Id.) On May 14, 2010, the warden at USP-Big Sandy denied Administrative Remedy 588468-F1. (Id.)

On June 3, 2010, Gross filed Administrative Remedy 588468-R1 with the Regional Office. (Doc. 10-2, Administrative Remedy Generalized Retrieval, at 74). On November 1, 2010, the Regional Director partially granted the appeal and remanded the incident report back to the institution. (Id.) On November 29, 2010, Gross filed Administrative Remedy 588468-A1 with the Central Office. (Id. at 73). The Central Office rejected Administrative Remedy 588468-A1 because it was not legible and Gross did not provide a copy of the DHO report he was appealing or identify the charges and date of DHO action he was appealing. (Id.) The Rejection Notice informed Gross that he could resubmit Administrative Remedy 588468-A1 in proper form within fifteen (15) days. (Id.) On February 8, 2011, Gross re-filed Administrative Remedy 588468-A2 with the Central Office. (Id. at 74). On February 15, 2011, the Central Office rejected the administrative remedy because it was still illegible. (Id.) Gross was again advised that he may re-submit his appeal in proper form within fifteen (15) days of the rejection notice. (Id.) There is no indication that Gross re-submitted his Administrative Remedy 588468. (Id. at 74-130). Instead, on July 22, 2011, Gross filed Administrative Remedy Appeal 648932- R1 regarding the DHO report for incident report number 1868010. (Doc. 10-2, Odell Decl., at 4, ¶ 12; Doc. 10-2, Administrative Remedy Generalized Retrieval, at 75). On August 31, 2011, the Regional Director denied the appeal. (Id.) There is no evidence that Gross appealed the Regional Director's denial of Administrative Remedy 648932-R1 to the Central Office. (Id. at 74-130).

The court finds that Gross failed to exhaust the available administrative remedies with respect to incident report number 1868010. On May 4, 2010, Gross filed his initial administrative remedy concerning incident report 1868010. Although administrative remedies challenging a DHO decision must first be raised directly to the Regional Office, see 28 C.F.R. § 542.12(d)(2), the warden at USP-Big Sandy accepted and denied the remedy.

Gross then filed Administrative Remedy 588468-R1 with the Regional Office, which was granted in part and remanded to the institution. (Doc. 10-2, Administrative Remedy Generalized Retrieval, at 74). Gross subsequently appealed to the Central Office. (Id. at 73). The Central Office rejected the administrative remedy and advised Gross that he may resubmit his appeal in proper form within fifteen (15) days. (Id.) Gross re-filed the administrative remedy with Central Office, which was again rejected because it was still illegible. (Id.) Gross was granted another opportunity to re-submit his appeal in proper form within fifteen (15) days of the rejection notice. (Id.) Gross failed to re-submit Administrative Remedy 588468. At this point, rather than comply with the directives of the Central Office, Gross filed another administrative remedy with the Regional Director regarding the DHO report for incident report number 1868010. (Doc. 10-2, Odell Decl., at 4, ¶ 12; Doc. 10-2, Administrative Remedy Generalized Retrieval, at 75). The Regional Director denied the appeal and there is no indication that Gross appealed to the Central Office. (Id. at 74-130). Rather than comply with the BOP's administrative review process, Gross then filed the instant petition.

Gross admits that he failed to exhaust administrative remedies with respect to incident report 1868010, and requests that the court excuse him from complying with the exhaustion requirement. (Doc. 1, at 2). However, he fails to state how exhaustion would be futile. Instead, Gross argues that because the administration at USP-Big Sandy accepted and denied his initial administrative remedy, which should have been submitted directly to the Regional Director, he is entitled to reinstatement of the good conduct time challenged in incident report number 1868010. (Doc. 11, at 3). Gross fails to demonstrate that the institution's ruling on his initial administrative remedy affected his ability to properly complete the administrative remedy process. Notably, Gross proceeded to file several administrative remedies challenging incident report number 1868010, but failed to properly complete the appeal process.

An administrative remedy appeal is not fully and finally exhausted until it has been denied by the BOP's Central Office. Because Gross has not alleged facts that would permit the court to find that exhaustion would have been futile, or that requiring exhaustion would subject him to "irreparable injury," the claims regarding incident report number 1868010 will be denied for failure to exhaust administrative remedies. To hold otherwise would frustrate the purposes of the exhaustion doctrine by allowing prisoners to invoke the judicial process despite failing to complete administrative review.

### C. Claims not Cognizable in a Federal Habeas Corpus Action

Gross argues that his custody classification should be corrected to remove the attempted escape charge against him in incident report number 2634977, thereby removing him from the "2 hour watch high accountability program" and permitting his transfer to a lower security facility. (Doc. 1, at 3). Respondent contends that Gross' claims concerning his custody classification score, removal from the two-hour watch list, and his request for transfer to a lower security prison are not cognizable in a habeas corpus action. (Doc. 10, at 11-12).

A habeas petition may be brought by a prisoner who seeks to challenge either the fact or duration of his confinement. Preiser v. Rodriguez, 411 U.S. 45, 494 (1973); Tedford v. Hepting, 990 F.2d 745, 748 (3d Cir. 1993). "Habeas relief is clearly quite limited: 'The underlying purpose of proceedings under the 'Great Writ' of habeas corpus has traditionally been to 'inquire into the legality of the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful.'" Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002) (quoting *Powers of Congress and the Court Regarding the Availability and Scope of Review*, 114 Harv.L.Rev. 1551, 1553 (2001)). However, when seeking to impose liability due to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, the appropriate remedy is a civil rights action. See Leamer, 288 F.3d at 540. "Habeas corpus is not an appropriate or available federal remedy." See Linnen v. Armainis, 991 F.2d 1102, 1109 (3d Cir. 1993).

Gross' claims related to his BOP custody classification, placement on a two-hour watch list, and request for transfer to a lower custody institution are challenges to the conditions of his confinement, and not the legality of his detention or the sentence. See Levi v. Ebbert, 2009 WL 2169171 at *5-7 (M.D. Pa. July 20, 2009) (claims which pertain to an inmate's custodial classification scores are not cognizable in a federal habeas petition), aff'd 353 F. App'x 681 (3d Cir. 2009); McCall v. Ebbert, 384 F. App'x 55 (3d Cir. 2010) (district court properly dismissed for lack of jurisdiction § 2241 petition challenging transfer to increased security level and conditions of confinement). Because these claims do not affect the duration of Gross' confinement, they are not cognizable in a habeas petition. Therefore, the court will dismiss these claims without prejudice to any right Gross may have to assert these claims in a properly filed complaint pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

### III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied regarding the challenges to incident report numbers 2634977 and 1868010. The claims challenging Gross' conditions of confinement, i.e., custody classification, placement on a two-hour watch list, and request for transfer to a lower custody institution, will be dismissed without prejudice.

An appropriate order will issue.

 /S/ Christopher C. Conner
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania